Ottis D. WELCH

v.

J. RAY McDERMOTT & CO., Inc. and Associated Pipeline Contractors, Inc., the Aetna Casualty & Surety Company, Intervenor.

Civ. A. No. 14670.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Jan. 17, 1972.

———◆———

Bernard Kramer, Alexandria, La., for plaintiff.

James T. Guglielmo, Dubuisson & Dubuisson, Opelousas, La., for defendants.

Jimmy M. Stoker, Gold, Hall, Hammill & Little, Alexandria, La., for intervenor.

NAUMAN S. SCOTT, District Judge:

Plaintiff, Ottis Welch, has sued J. Ray McDermott Company, Inc. (McDermott) and Associated Pipeline Con-

tractors (Associated), owner and alleged charterer, respectively, of Lay Barge No. 12, for injuries suffered as a result of an accident occurring November 18, 1968. Associated has been dismissed voluntarily from the action as no charter was entered into. Aetna Casualty & Surety Company (Aetna) has intervened to recover compensation paid by it on behalf of its insured, Ford, Bacon & Davis (FB&D), plaintiff's employer.

On November 18, 1968, Lay Barge No. 12 was on location some sixty (60) miles off the Louisiana Coast in the Gulf of Mexico. It was equipped for and in the process of constructing a pipeline to connect offshore production with land based facilities. Operations were shut down on the above date due to heavy seas, estimates of which ranged from 8 to 12 feet. During this period when no work was proceeding, Ottis Welch slipped, fell and injured his back in a bathroom area outside a shower located in the welding inspector's quarters on the barge. Welch has sued McDermott as owner of the vessel.

At the time of the injury Welch was employed by FB&D as a welding inspector. FB&D contracted to perform the engineering work necessary in connection with the actual construction of the pipeline. McDermott was, at all times pertinent, the owner of and in control of Lay Barge No. 12.

▮ Lacking motive power, the barge was moved by the use of a tugboat. Lay Barge No. 12 was therefore a vessel. Offshore Company v. Robison, 266 F.2d 769 (5th Cir. 1959). No strenuous argument to the contrary has been raised by the defendant.

▮ The duties of Welch as a welding inspector aboard the vessel were to visually inspect welds made when connecting the sections of pipe necessary to form the pipeline and to read the x-ray photos made of these welds in an effort to find possible hidden defects. It appears that Welch was working a "10 days on—5 days off" shift; during his working time he ate, slept and worked on the barge and was more or less permanently attached to Lay Barge No. 12. Although the work had been temporarily halted, the vessel was still in navigation. The duties performed by Welch aboard the vessel contributed in an indispensable manner to the function and mission of the vessel. Plaintiff was a seaman and a member of the crew of Lay Barge No. 12, and therefore entitled to a warranty of seaworthiness under the General Maritime Law, Offshore Company v. Robison, supra.

The injury suffered by plaintiff was received as he was stepping out of the shower stall in the bathroom of his quarters. The room in which the stall was located had a tile flooring with the drain located directly in front of the shower stall entrance. The shower stall itself was a metal compartment situated in a corner of the room. The entrance to the stall was formed by a "U" shaped opening with the lowest part of the sill approximately 12 to 18 inches from the floor. So constructed, the user had to step up in order to get out of the shower. Neither at the entrance to nor within the shower were there any rails, grab handles, or other devices by means of which a bather could catch or support himself while leaving the shower stall. The evidence does, however, establish that there was a towel bar just outside of the entrance attached to the wall on the exiting bather's left. The opening of the shower stall was covered by a canvas shower curtain which in conjunction with the elevated sill was intended to prevent the escape of any water while the shower was in use. There was no mat or towel provided that could have been used to form a slip resistant area upon which a bather could place his feet as he stepped out of the stall.

Plaintiff stepped out of the stall on the morning of November 18, 1968, after having showered. His right foot having already been placed on the floor outside of the stall, Welch started to bring out his left foot; this motion he never completed for his right foot slipped out from under him, causing him to fall

back, striking his lower back on the raised sill. Although there is conflicting evidence as to the amount of water present on the floor, the Court is convinced that some water was present and this water had escaped from the shower stall, causing the slippery condition which was the proximate cause of the accident and resulting injury.

■ It has been established beyond question that a seaman can recover for an injury caused by the failure of the shipowner to provide seaworthy living conditions. Krey v. United States, 123 F.2d 1008 (2nd Cir. 1941). From Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), and the multitude of cases following the reasoning of the Supreme Court, it is clear that a vessel need not be "accident free". Rather the vessel owner has the absolute duty to provide a vessel that is reasonably fit. Mitchell v. Trawler Racer, Inc., *supra*. "(T)he existence of such unseaworthy conditions may very well be found under circumstances which might not be considered unsafe on land because of the increased risks in the circumstances and of the traditional protection accorded seamen as wards of the admiralty." Krey v. United States, *supra*, 123 F.2d p. 1010. See also Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. The shipowner's duty to provide a seaworthy vessel is absolute and non-delegable; the failure to so provide is not predicated on negligence or the lack of due diligence. Mahnich v. Southern SS Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. The exercise of reasonable care on the part of a vessel owner does not relieve him of liability for the damage proximately caused by an unseaworthy condition. Mahnich v. Southern SS Co., *Id.*, Mitchell v. Trawler Racer, Inc., *supra*.

■ The sole question is whether or not the shower was unseaworthy. It is the conclusion of the Court that it was. Viewed as a shower to be used at sea, the lack of any handle or bar for support when stepping out does itself present an unsafe condition. The presence of water made slippery by soap would make it difficult enough for a bather to safely step out of the stall with the shower steady; at sea, with water on the floor outside of the stall, it is clearly more difficult. In addition, there is no reason why a mat made of some type of non-slip material should not have been available for the use of a bather stepping over the sill and upon the tile floor. These factors combined to establish an unseaworthy condition which proximately caused the injuries received by the plaintiff.

■ Though the Court finds that the vessel owner defaulted on its obligation to provide seaworthy living quarters, the Court also finds the plaintiff guilty of contributory negligence. When a seaman is contributorily negligent and such negligence proximately contributes to the injury, his suit will not be barred but rather his negligence will be used to reduce the amount of damages received. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

■ The seas at the time Welch fell were admittedly running from 8 to 12 feet. Although the plaintiff has claimed that this movement of the vessel in the heavy seas did not cause him to fall, this Court cannot accept the contention that this movement was not a contributing factor in the fall. Further, the water on the floor outside the shower would not have been present had plaintiff taken proper care to keep the entrance of the stall covered with the shower curtain. Welch admitted to being aware that this tile floor was slippery when wet or damp; the vessel was rocking violently in the heavy seas; he, therefore, had every reason to care for his own safety. This he failed to do.

The Court finds that the negligence of the plaintiff contributed to his injuries in the amount of one-half. His award will, therefore be reduced accordingly. Palermo v. Luckenbach SS Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957); Pope & Talbot, Inc. v. Hawn, *supra*.

On the date of the injury, Welch was forty-one years of age and had undergone two operations on his lower back in 1963. These previous operations were performed to correct a disc problem at the L–4, L–5 interspace. From this previous injury and operations, Welch was given a twenty percent disability.

The injury which gave rise to this litigation is at the same location as the 1963 injury and operations. As a result of this recent injury, plaintiff has undergone a number of operations in an effort to correct the condition. It appears that plaintiff has had complications, mostly in the nature of infections, during the course of his recovery.

Plaintiff has a permanent partial disability which is directly attributable to the injury he sustained on November 18, 1968. This disability will permanently prevent him from performing work as a welder or welding inspector. However, he should be able to perform jobs requiring lesser amounts of manual labor.

The plaintiff, now forty-four years of age, was earning $650.00 per month as a welding inspector. He has been unable to return to work since the date of the accident over three years ago.

■ Damages to a man's income earning capacity are impossible to assess with mathematical certainty; the placing of a monetary figure on the physical pain, suffering and disability endured is even less precise. These matters are left to the sound judgment and discretion of the Court. For pain, suffering and disability as a result of the back injury and the numerous surgical procedures undergone by plaintiff, the Court assesses damage for this cause at Fifty Thousand and No/100 ($50,000.00) Dollars. For the loss of earnings, both past and future, the Court assesses the amount of Ninety Five Thousand and No/100 ($95,000.00) Dollars. The total of these damages is One Hundred Forty Five Thousand and No/100 ($145,-000.00) Dollars, subject to the reduction by one-half because of the plaintiff's contributory negligence. The plaintiff in intervention is awarded judgment for the compensation and medical expenses paid by it to the date of this judgment.

This opinion will serve as the Court's findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R.Civ. P.