**Pamela TULLOS, Wife of/and Ronald David Tullos, Plaintiffs-Appellees Cross-Appellants,**

v.

**RESOURCE DRILLING, INC., and Superior Oil Company, Defendants-Appellants Cross-Appellees.**

No. 84–3099
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1985.

Rehearing Denied Feb. 5, 1985.

Weigand, Weigand & Meyer, Joseph J. Weigand, Jr., Houma, La., for defendants-appellants cross-appellees.

Wiedemann & Fransen, Michael A. Fenasci, A. Remy Fransen, Jr., New Orleans, La., for plaintiffs-appellees cross-appellants.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this maritime action, the employer, Superior Oil Company (Superior), and the vessel owner, Resource Drilling, Inc. (Resource), are appealing the judgment of the district court as to the seaman status of the injured worker, Donald Tullos, the jury's finding of negligence under general maritime law, the jury's finding of only ten percent contributory negligence by the seaman and the seaman's wife's right to a claim for loss of consortium under general maritime law. The seaman on cross-appeal is challenging the remittitur allegedly forced on him concerning the award received by his wife for loss of consortium and the court's failure to submit to the jury the issue of arbitrary and capricious denial of maintenance and cure benefits by his employer. Because the remittitur may not be challenged on appeal if agreed to as it was here, we do not reach that issue. We affirm the judgment of the district court except as follows: the case is reversed and remanded for submission to the jury of the issue of arbitrary and capricious denial of maintenance and cure.

## I. Background

Donald Tullos was an oil well inspector for Superior at the time of the injury which is the subject matter of this lawsuit. Superior hired Resource to drill an offshore oil well. Resource was the owner and operator of the drilling vessel upon which Tullos was injured on February 10, 1982. Tullos testified that he discovered mud in the pump room of the vessel, walked through it and some oil, scraped his shoes, and then ascended the stairs to the captain's office. After encountering additional mud and oil on the stairs, he slipped and fell on the second flight of stairs, injuring his back. An employee of Resource who worked as a "mud man" testified that during February, the month in which the accident occurred, the mud pumps were leaking because of the use of improper packing material and that the overflowing mud which was mixed with diesel fuel was not being properly cleaned up. Resource introduced printouts

from a pitograph which measures mud loss to show that there was no mud loss on the 9th and 10th of February. A motor man testified that the stairs were cleaned by himself, other motor men, a toolpusher, and roustabouts.

The district court found, as a matter of law, Tullos to be a Jones Act seaman. Other issues were presented to a jury in special interrogatories. The jury found Resource negligent under general maritime law and awarded $325,000 in damages to Tullos and $100,000 in damages to his wife for loss of consortium. The jury also found Tullos to have been ten percent contributorily negligent. As to Tullos' employer, Superior, the jury found the company liable for maintenance and cure, specifically finding that Tullos had not yet reached maximum medical cure.

The district court reduced the jury awards against Resource and in favor of Tullos and his wife by ten percent in view of the finding of contributory negligence. The court also awarded maintenance and cure of $15 per day against Superior, to be paid until Tullos reaches maximum cure. The court later granted a remittitur of $60,000 for loss of consortium.

On appeal, Superior and Resource have jointly raised the following issues: whether Tullos was a Jones Act seaman; whether a Jones Act seaman may raise a negligence claim under general maritime law against a vessel owner; whether the evidence supported the finding of negligence; whether Tullos' fault should have been found to have been 100% or at least 50% because he admitted walking in oil and mud prior to climbing the stairs; whether the wife of a Jones Act seaman is entitled to loss of consortium under general maritime law against a vessel owner. On cross-appeal Tullos and his wife have raised the following additional issues: whether the district court violated Tullos' due process and equal protection rights by ordering him to

accept the remittitur in his wife's separate claim for loss of consortium and whether the district court erred in ruling that as a matter of law Superior was not arbitrary and capricious in refusing maintenance and cure payments rather than submitting the question to the jury for a possible punitive damage award.

### II. *Discussion*

#### 1. Seaman Status

Appellants Superior and Resource first assert that the district court erred in finding Tullos to be a seaman within the meaning of the Jones Act, 46 U.S.C. § 688. Tullos alleges only that he is a seaman with respect to his employer, Superior.[1]

Seaman status is ordinarily a question of fact for the jury. In this case, the district judge ruled that as a matter of law, Tullos was a seaman. The judge is permitted to do this as explained in *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832 (5th Cir.1982):

> The Supreme Court ha[s] ... established the principle that seaman status is basically a question of fact .... This court has held, however, that the Supreme Court ... did not intend to strip the judge of his authority to direct a verdict or grant summary judgment, if there is no genuine issue of material fact to be submitted to the jury .... Thus, although seaman status is an issue of fact, when there are no facts in dispute, a court may rule on the issue as a matter of law .... [I]f the *Robison* requisites are met and there is no dispute over these factors, the court may grant a summary judgment or directed verdict declaring as a matter of law that the plaintiff is a seaman.

*Id.* at 835 (citations omitted). This Court has even found a district court to have erred in *not* deciding seaman status as a matter of law when "the facts governing plaintiff's status as a seaman were estab-

---

**1.** In fact, Tullos specifically argues, in another context, that he is not a seaman with respect to Resource. His negligence claim against Resource under general maritime law, it is argued, permitted his wife to bring a claim for loss of consortium, which she could not do as the wife of a Jones Act seaman.

lished beyond cavil." *Landry v. Amoco Production Co.,* 595 F.2d 1070, 1071 (5th Cir.1979). For the district court to properly have determined that Tullos was a seaman as a matter of law, there must be no basis for reasonable persons to draw conflicting inferences from the evidence. Evidence is required under the *Robison* test for seaman status that (1) the worker was permanently assigned to or did a substantial portion of his work on a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water), and (2) the work he performed contributed to the function of the vessel or to the accomplishment of its mission or to the operation or welfare of the vessel in terms of its maintenance. *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), as interpreted in *Bouvier v. Krenz,* 702 F.2d 89, 90 (5th Cir.1983), and *Landry,* 595 F.2d at 1073.

Tullos was an oil well inspector for Superior which hired Resource to drill an offshore oil well and furnish the drilling vessel on which Tullos was subsequently injured. There is no real dispute as to Tullos' permanent assignment to the vessel. There is also no real dispute that his work contributed to the mission of the vessel—drilling an oil well.

The district court expressed concern as to whether an employee can be a seaman when his employer is not the operator of the vessel, but correctly determined that the case of *Parks v. Dowell,* 712 F.2d 154 (5th Cir.1983), was controlling on this issue. In *Parks,* the plaintiff worked on a drilling tender assisting in the drilling of a well owned by CNG. He was described as being CNG's "company man" on the job: "He was paid by CNG to supervise the drilling operation. He was permanently assigned to the tender where he had his office and performed most of his duties." *Id.* at 156. The plaintiff was found to be a seaman given that the tender was a vessel.

In reaching its conclusion that Tullos was a seaman, the district court did not consider the additional cases presented to this Court on appeal by Tullos: *Reed v. Pool Offshore Co.,* 521 F.Supp. 324 (W.D. La.1981), and *Welch v. J. Ray McDermott & Co.,* 336 F.Supp. 383 (W.D.La.1972).[2] Although in *Reed* the plaintiff was an employee of Crown Oilfield Services, Inc. performing duties for Crown aboard Mobil's barge when he was injured, the district court found him to be a seaman under the *Robison* standard of permanent assignment to a vessel upon which duties are performed in furtherance of the mission of the vessel. 521 F.Supp. at 326–27. Similarly, in *Welch* the plaintiff was a welding inspector employed by FB & D which contracted to perform engineering work on a pipeline. He slipped in a bathroom on a barge not owned or operated by his employer. He was also found to be a seaman under the *Robison* requirements. 336 F.Supp. at 384.

■ The undisputed facts pertaining to Tullos' employment on the vessel owned by Resource are sufficient to satisfy the *Robison* requirements and permit a ruling as a matter of law that Tullos was a seaman. It should be noted, however, that meeting the *Robison* requirements usually merely provides sufficient evidence for seaman status to reach the jury. The district judge, in this case, however, felt bound by the very similar factual situation in *Parks* to make the ruling as a matter of law. He did not err in doing so.

### 2. Negligence under General Maritime Law

■ Appellants make two preliminary arguments that Tullos, acknowledged for the purposes of this issue to be a seaman, was not entitled to a negligence claim under general maritime law against the vessel owner, Resource. First, they argue that a seaman cannot have a cause of action under general maritime law. This ar-

---

**2.** Appellants imply some impropriety in these cases not being brought to the attention of the court by Tullos at trial. While the additional

cases are not necessary to the resolution of the issue of seaman status on appeal, nothing precludes our considering them.

gument overlooks the fact that Tullos is not asserting his general maritime law claim against his Jones Act employer, but against Resource, the owner of the vessel upon which he was working when he was injured. A seaman injured while performing duties for his employer aboard a vessel may sue the vessel owner under general maritime law. *See Reed,* 521 F.Supp. at 326–27.

Second, they argue that Tullos was on board the rig for purposes inimicable to the legitimate interests of the rig owner and therefore was owed no duty of care by the vessel owner. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). Appellants' argument is based on the following holding in *Kermarec:* "We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* The intent of the holding was to eliminate distinctions between licensees and invitees as to the duty of care owed. *Id.* at 630, 79 S.Ct. at 409. No evidence or argument has been presented to support the allegation that Tullos was on board for purposes inimical to the vessel. To the contrary, his work on board the vessel was to monitor drilling operations by Resource which had been hired by Tullos' employer to drill an oil and gas well in Louisiana coastal waters.

As a separate issue, appellants claim there was insufficient evidence on which to submit the question of negligence to the jury because Tullos failed to prove that Resource knew or had reason to believe that the steps had mud on them prior to Tullos' fall. Tullos points to testimony by the "mud man" that: (1) during February the mud pumps were leaking because inadequate packing was being used on them, and (2) mud was constantly tracked throughout the pump room and stern stairwell areas by the crew. The jury may well have inferred all of the requisite elements of negligence from this testimony in combination with Tullos' own testimony. Questions of negligence in admiralty cases are fact questions. *Cheek v. Williams-McWilliams Co.,* 697 F.2d 649, 652 (5th Cir.1983). "The rule is well established that findings of fact in admiralty cases are binding unless clearly erroneous." *Id.* The appellants have not met their burden of showing that the negligence findings were clearly erroneous.

### 3. Comparative Negligence

Appellants also argue that Tullos' own actions were the sole cause of the accident and, in the alternative, that the fault was one half his. The jury found Tullos to be ten percent contributorily negligent. The clearly erroneous standard of review for facts applies to the apportionment of fault. *See, e.g., Flowers Transportation, Inc. v. M/V Peanut Hollinger,* 664 F.2d 112, 114 (5th Cir.1981). Based on the facts of this case, a finding of ten percent negligence by Tullos is not clearly erroneous.

### 4. Loss of Consortium

Appellants rely on *Beltia v. Sidney Torres Marine Transport,* 701 F.2d 491 (5th Cir.1983), to support their assertion that a seaman's wife does not have a cause of action for loss of consortium under general maritime law. The specific holding of *Beltia* is "that the wife of a Jones Act seaman cannot base her loss of society claims on negligence under the general maritime law." *Id.* at 494. Tullos explains this holding to mean that the husband must have a claim under general maritime law and not *only* be claiming relief under the Jones Act. For example, in *Cruz v. Hendy International Co.,* 638 F.2d 719, 725 (5th Cir.1981), this Court found that "the spouse of a person entitled to recover for vessel unseaworthiness [under general maritime law] has a cause of action for loss of society whether the injured person was a member of a vessel crew or was for some other reason entitled to a seaworthy vessel." *Cruz* notes, however, that loss of consortium is not available in a claim of negligence under the Jones Act. *Id.*

■ Recently, this Court has discussed both *Beltia* and *Cruz* as follows: "The spouse of an injured crew member who survives his injury may recover her loss of society in an action for unseaworthiness *because* such an action is based on general maritime law.... However, the legislative remedy granted an injured seaman under the Jones Act does not include the right to claim such damages." *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir.1984) (emphasis added). Tullos argues that because he did recover under general maritime law (on his negligence claim against Resource which was not his Jones Act employer), that is sufficient to support the loss of consortium claim. This argument is valid. Pamela Tullos' loss of consortium claim was not asserted as part of the Jones Act relief sought but in conjunction with the negligence claim against Resource under general maritime law. The loss of consortium claim may stand.

### 5. Remittitur

■ Tullos may not appeal the issue he raises concerning the district court's compelling him to accept the remittitur on his wife's claim for loss of consortium. The law of this Circuit is clear that even if a remittitur is accepted *under protest*, the plaintiff cannot appeal from it given that it was accepted. *See Krahn v. B.F. Goodrich Co.*, 559 F.2d 308, 308 (5th Cir.1977), (citing *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649–50, 97 S.Ct. 835, 836–37, 51 L.Ed.2d 112 (1977)).

### 6. Arbitrary and Capricious Failure to Pay Maintenance and Cure

On cross-appeal, Tullos has challenged the district court's decision to remove from the jury the question of arbitrary and capricious refusal by Superior to pay maintenance and cure and his right to recover damages therefor. Tullos first raised the issue of the denial of maintenance and cure as being "wrongful" in his complaint. In the pre-trial order, Tullos phrased the issue as follows:

The defendants have arbitrarily stopped maintenance and cure payments to Mr. Tullos. Therefore, plaintiff will seek punitive damages for the defendants [sic] refusal to pay these items of compensation and will seek to recover all back payments and future payments due him and all attorney's fees.

Tullos requested several jury instructions concerning the issue of maintenance and cure including the following one that was not given:

In the event that you find that defendant was arbitrary and capricious in its denial of maintenance and cure to an injured seaman, this failure will subject the shipowner to penalties for such failure. Arbitrary means to do something without any reason. Capricious means to do something without good reason. The penalties for arbitrary and capricious failure to pay maintenance and cure are money damages for any mental anguish, humiliation, or aggravation [sic] of the physical injuries suffered by the seaman for the expenses incurrred [sic] by the injured seaman to hire counsel for prosecution [sic] his claims for maintenance and cure.

The district judge explained his withholding of the question of punitive damages for arbitrary and capricious denial of maintenance and cure as based on the employer's legally valid belief that Tullos was not a seaman. Specifically, the court stated:

... I tell the plaintiffs that if they want to do any looking, I don't propose to charge the jury on punitive damages with respect to the maintenance and cure issue, based not only upon the medical but also upon the legal proposition that until I read the Parks case, and even after I read it, if I were not bound by it, I would hold that he was not a seaman. I cannot say that it's an unreasonable position on the part of the defendant saying that if I would have said that until you produced the Parks case, all of us agreed until then that nobody could find one case that dealt with a company [man] held to be a seaman.

... I'm going to tell the jury he's a seaman when we get to the maintenance and cure, but I'm not going to give them

the question on arbitrariness and penalty for the reasons I have said.

Tullos did not object to the district court's refusal to include in the jury charge the issues on his arbitrary and capricious denial of maintenance and cure claims.

In addition to *Parks,* 712 F.2d 154, Tullos relies on two prior cases to establish his seaman status: *Welch,* 336 F.Supp. 383, and *Reed,* 521 F.Supp. 324. *See supra* note 2. Further, Tullos argues that it is inconsistent for Superior, who believed him to be a seaman to the extent of paying him maintenance and cure benefits, to not be held liable for the *termination* of those benefits based on legal doubt of his seaman status.

A threshold issue is whether Tullos' failure to formally object to the judge's removal of the issue of arbitrary and capricious denial of maintenance and cure from the jury bars consideration of this issue on appeal. A commentator has evaluated the requirement for objections as follows: "The requirement of an objection is to be construed practically. Since one 'purpose of informing the court of a supposed error is to give it an opportunity to reconsider its ruling and to make any changes deemed advisable,' there is no need for a formal objection where the court is fully aware that the party does not agree with his decision." 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 46.02, at 1907 (2d ed. 1984) (pertaining to Fed.R.Civ.P. 46). Fed.R.Civ.P. 51 specifically applies to objections to instructions to the jury. It states in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." Fed.R.Civ.P. 51.

 However, this Court has recently found that objections formally required under Rule 49(a) concerning special verdicts were not required to preserve an issue on appeal when the requested instructions and verdict form were submitted to the trial

court and the court's attention was drawn to the issue in question. *See Solis v. Rio Grande City Independent School,* 734 F.2d 243, 248 n. 4 (5th Cir.1984). Further, this Court has previously noted that defendants failing to object to a court's instruction to the jury that the plaintiff was a Jones Act seaman did not thereby lose their right to appellate review of the issue of seaman status being taken from the jury. *See Menard v. Penrod Drilling Co.,* 538 F.2d 1084, 1088 n. 4 (5th Cir.1976). In the case *sub judice,* although the denial of the requested instruction and the court's refusal to submit to the jury the arbitrary and capricious issue were not specifically objected to by Tullos, the issue may nevertheless be deemed to have been preserved on appeal. *See Solis, supra.*

 It is therefore necessary to consider whether the district court erred in impliedly directing a verdict by removing the issue of arbitrary and capricious denial of benefits from the purview of the jury. The trial judge's reasoning that Tullos' seaman status was not clear to the court until after he read the *Parks* case during trial does not provide a basis for removing this issue from the jury. The court itself found Tullos to be a seaman, and Tullos' employer, Superior, had paid him maintenance and cure due a seaman, but then *terminated* those benefits. It is the termination of the benefits that Tullos alleges was arbitrary and capricious and for which he sought punitive damages.

The district court also considered the evidence presented concerning the arbitrariness of the termination of maintenance and cure benefits. Tullos points to the testimony of three treating physicians who found him unable to return to his work aboard drilling rigs. The physician presented by the appellants at trial testified that where Tullos would work would not be a significant consideration *"with the exception* of an off-shore transit. That is, if he had to go back and forth on a boat and it was in rough seas, and he was doing that type of activity, I think that could potentially be injurious...." (emphasis added). Tullos argues that the appellants were aware of his continued disability and not only refus-

ed to pay his maintenance stipend but also all medical and hospital bills presented to them except for those from medical examiners chosen by themselves. Tullos argues that the appellants were trying to render him destitute so that he would settle the case and were "physician shopping" to create issues relative to his medical problems.

Superior contends that it ceased paying maintenance and cure on October 28, 1982 (having paid it since April 13, 1982) "because the medical evidence did not support the plaintiff's claim that he had not reached maximum cure." Superior does not argue that any question of Tullos' seaman status played any role in its decision to discontinue maintenance and cure payments. Superior lists all of the physicians that Tullos saw from February 16, 1982, to May 14, 1982, for whose care Superior paid. However, when on October 28, 1982, Tullos saw an orthopedic surgeon selected by Superior, Dr. G. Gernon Brown, who found no evidence of injury and expressed the opinion that Tullos could return to work, Superior terminated its maintenance and cure payments. On the same day, Tullos' attorney wrote Superior requesting reinstatement of payments.

██ As to the diagnoses and prognoses of the physicians, they are not so clear and consistent as to validate removing the issue of arbitrary and capricious denial of the maintenance and cure from the jury. The diagnoses varied from soft tissue injury or chronic back sprain to a "lumbar facet syndrome" requiring spinal fusion to "spondylitis" to no indication of any organic disorder by certain tests. "[T]he cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure." *Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir.1978). "It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure ...." *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1st Cir.1980) (citing *Vella v. Ford Motor Co.*, 421 U.S. 1, 4, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975)); *cf. Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1115–17 (5th Cir.1984). How-

ever, such a determination should be unequivocal to terminate the right to maintenance and cure. 626 F.2d at 202. In the case *sub judice*, extensive controversy was present in the medical opinions.

██ A punitive damage claim in the context of the denial or termination of maintenance and cure at one time was limited only to reasonable attorneys' fees. *See e.g., Lirette*, 579 F.2d at 969; *Kraljic v. Berman Enterprises, Inc.*, 575 F.2d 412, 416 (2d Cir.1978); *Blanchard v. Cheramie*, 485 F.2d 328, 331 (5th Cir.1973). However, subsequent cases "have established that, in addition to ... attorneys' fees, punitive damages for [willful and arbitrary] refusal are available under the general maritime law." *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir.1984); *accord Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 88 (5th Cir.1984). Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. *See Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir.1984); *Holmes*, 734 F.2d at 1118. The latter example was the situation in *Holmes*. Although the facts of the case *sub judice* are not as compelling in showing arbitrary and willful conduct by the employer, they are sufficient for a jury question: Superior was requested by counsel to reinstate benefits and further diagnoses were obtained such that it was not medically certain that Tullos had reached maximum cure. There is some question of the promptness with which Tullos informed Superior of his subsequent medical diagnoses and expenses, but any delay was not sufficient to remove the question from the jury. *See Harrell v. Dixon Bay Transportation Co.*, 718 F.2d 123, 129–30 (5th Cir.1983). It should be noted that in its most recent opinion on the subject, this Court expressed its belief "that the willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper*, 741 F.2d at 90. The jury

needs to resolve whether Superior's reliance on a report requested from its own physician to terminate benefits in conjunction with a refusal to pay further medical bills submitted was done in bad faith. The issue of whether Tullos had reached maximum cure was presented to the jury which found that he had not. Sufficient evidence was presented to raise a jury question as to the arbitrariness or capriciousness of the denial of his benefits in view of the continuing conflicting diagnoses and prognoses. In essence, Superior chose one doctor from many and followed his recommendation. This may *not* be arbitrary and capricious, but it is sufficient evidence entitling Tullos to have the jury resolve his arbitrary and capricious claim.

For the foregoing reasons, the judgment below is AFFIRMED in part; REVERSED and REMANDED in part for submission to a jury on the issue of arbitrary and capricious denial of maintenance and cure.