550 So.2d 278 (1989)
Lawrence E. PORCHE
v.
MARITIME OVERSEAS CORPORATION, et al.
No. 88-CA-2140.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
*279 Joseph W. McKearn, New Orleans, for plaintiff/appellee.
James B. Kemp, Jr., Clayton G. Ramsey, Ira J. Rosenzweig, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and PLOTKIN and BECKER, JJ.
BECKER, Judge.
On September 24, 1985, the plaintiff/appellee Lawrence Porche was employed as a seaman aboard the S/T Overseas Arctic which was owned and operated by the defendant/appellant Maritime Overseas Corporation. The plaintiff was serving as a deck/engine/utility worker whose primary responsibility was to keep the engine room clean and free from oil and grease.
On September 24, 1985, the date of his accident, Mr. Porche testified that he had been standing on a pipe in the engine room of the vessel in order to access a seawater filter that needed changing. Apparently, the pipe was coated with a transparent film of lubricating oil which caused the plaintiff to slip and strike his left knee on another pipe. After receiving medical treatment in a foreign port and in New Orleans upon his return, Mr. Porche was found to be fit for duty and returned to his employment. Approximately four (4) weeks later on October 28, 1985, while climbing on a stairway aboard ship Mr. Porche's left knee gave out again. This aggravation of his September injury was reported to his employer and on November 13, 1985, Mr. Porche was seen by Dr. John Loupe, an orthopedist in Baton Rouge, Louisiana. On December 5, 1985, Dr. Loupe performed arthroscopic surgery on Mr. Porche's left knee and ordered that physical therapy follow the surgery.
On April 2, 1986 while at home in Baton Rouge, Mr. Porche's knee gave out yet again. Various treatments were rendered; however, a second surgery became necessary and was performed on April 15, 1987.
After the second surgery, Mr. Porche became severely depressed because of the lack of rehabilitation of his knee. He was referred by Dr. Loupe to a psychologist, Dr. Angelos. Initially Dr. Angelos treated Mr. Porche on an outpatient basis, but his condition worsened and on September 9, 1987, he was hospitalized at Parkland Hospital in Baton Rouge for treatment of severe depression and suicidal tendencies. The plaintiff was released on September 25, 1987, having improved noticeably.
At the trial on the merits in April of 1988, the jury found that Maritime Overseas Corporation was negligent, that the vessel the S/T Overseas Arctic was unseaworthy, and that the negligence and unseaworthiness were the causes of Mr. Porche's injury. The jury further found that Mr. Porche was not contributorily negligent *280 and should be awarded compensatory damages in the amount of $144,000.00. The jury also found Maritime Overseas acted arbitrarily and capriciously in failing to timely pay maintenance and cure benefits to the plaintiff, and awarded him punitive damages in the amount of $100,000.00.
The only issue raised on this appeal by Maritime Overseas Corporation is the plaintiff's entitlement to the award of punitive damages.
Maritime Overseas Corporation does not claim that the jury was not properly instructed on the law but only that the evidence was insufficient to support the finding that the company acted arbitrarily or capriciously or with callous disregard toward the plaintiff in the manner of its payment of maintenance and cure benefits.
The applicable general maritime law regarding seamen and their rights with regard to maintenance and cure is well established.
When a seaman becomes ill or injured while in the service of his ship, the ship owner must pay him maintenance and cure, whether or not the shipowner was at fault or the ship unseaworthy ... This obligation includes paying a subsistence allowance, reimbursing medical expenses actually incurred, and taking all reasonable steps to ensure that the seaman receives proper care and treatment. Morales v. Garijak Inc., 829 F.2d 1355 (5th Cir.1987).
Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery. Vaughn v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962);
A ship owner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees. Yelverton v. Mobile Laboratories Inc., 782 F.2d 555 (5th Cir.1986).
In Holmes v. J. Ray McDermott and Co., 734 F.2d 1110 (5th Cir.1984), the court stated that conduct which gives rise to damages for the termination of maintenance and cure has been characterized as "callous and recalcitrant", "arbitrary and capricious" and "willful, callous, and persistent." Laxness in investigating a claim that would have been found to have merit has been found to meet the standard, as has a finding that the employer had "no reasonable excuse" for its refusal. Breese v. AWI, Inc., 823 F.2d 100 (5th Cir.1987).
The cases in which punitive damages or attorney's fees have been granted share the common element of a shipowner's default, either in failing to provide maintenance and cure or in failing to investigate an injured seaman's claim. Harper v. Zapata Off-Shore Co., 741 F.2d 87 (1984).
Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. Tullos v. Resource Drilling Inc., 750 F.2d 380 (5th Cir.1985).
In order to differentiate between the type of conduct that justifies an award of punitive damages, recent cases have been interpreted as requiring a showing of bad faith on the part of the ship owner to support an award of punitive damages or attorney's fees. See Harper, supra; Tullos, supra.
Ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman. See Gaspard v. Taylor Diving and Salvage Co., 649 F.2d 372 (5th Cir.1981) cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).
No bright line separates the type of conduct that properly grounds an award of punitive damagesa shipowner's willful and callous default in its duty of investigating claims and providing maintenance and cure from the type of conduct *281 that does not support a punitive damage award. Harper, supra.

... it is clear that laxness in investigating a claim that would have been found to be meritorious will subject the shipowner to liability for attorney's fees and punitive damages. Holmes v. J. Ray McDermott, and Co. 734 F.2d 1110, (5th Cir.1984).
A review of the record reveals that after the October 28, 1985 injury to Mr. Porche's knee on board the vessel S/T Overseas Artic, the plaintiff applied for medical benefits under his contract with the Seafarers International Union. On November 6, 1985, the Union wrote a letter to Wally Sherback of Maritime Overseas Corporation informing him that medical benefits were not available to Mr. Porche under the Seafarers medical plan, and that Mr. Porche would be applying for maintenance and cure benefits directly from Maritime Overseas Corporation. Enclosed in the letter was a "not fit for duty" slip dated November 6, 1985.
Mr. Porche's attorney, by letter dated November 13, 1985, informed Maritime Overseas Corporation that he would be making a claim for maintenance and cure benefits on behalf of his client.
On December 31, 1985, Maritime Overseas wrote the plaintiff and acknowledged receipt of his latest medical report, but stated that since no diagnosis was given by the doctor they could not process his benefits until a more comprehensive medical report was received.
By letter dated January 10th the plaintiff's attorney again wrote Maritime Overseas and requested maintenance and cure benefits, and further informed them that they could be exposed to punitive damages and attorney's fees if benefits were not paid promptly. Maritime Overseas replied that until the plaintiff provided the comprehensive medical report they could not determine if benefits would be paid because they would not contact the doctor to obtain the report. The comprehensive medical report was acquired by the plaintiff's attorney and mailed to Maritime Overseas on January 24, 1986. Approximately three months after the initial request, Maritime Overseas Corporation began paying the requested maintenance benefits to Mr. Porche.
On April 9, 1986, the attorney for the plaintiff informed Maritime Overseas Corporation that since the physical therapist's bill had not been paid, the invoice had been turned over to a collection agency, and Mr. Porche could no longer receive treatment until payment was received on his account.
Four weeks later, Maritime Overseas responded on May 5, 1986, stating that since the plaintiff's doctor had found Mr. Porche temporarily fit for duty for several weeks that they would require further medical narratives from the doctor before considering any additional claims for maintenance and cure payments.
In a letter to Maritime Overseas dated June 5, 1986, the plaintiff's attorney provided the additional medical reports which stated that while Mr. Porche had been found temporarily fit for duty, his condition had worsened and he was unable to work. The attorney requested that Mr. Porche's maintenance be reinstated and that his physical therapy bills be paid as he was being denied needed treatment. The attorney further stated that legally, as the vessel owner, Mr. Porche's medical bills should be paid by Maritime Overseas, and that any dispute over who is legally obligated to actually pay medical benefits should be resolved between Maritime Overseas Corp. and the Seafarers Union.
On June 17, 1986, the plaintiff's attorney sent to Maritime Overseas a second copy of his June 5th letter and additionally enclosed a second "not fit for duty" slip, dated June 4, 1986.
On July 25, 1986, the attorney for the plaintiff wrote Maritime Overseas informing them that Mr. Porche was now receiving overdue notices from Our Lady of the Lake Medical Center in Baton Rouge and that his client was extremely upset about the possibility of his credit rating being impaired as a result of Maritime Overseas' failure to timely pay this medical expense, *282 and that the company could be liable for punitive damages for their neglect.
Again, on August 12, 1986, the plaintiff's attorney requested payment of the medical bills as Mr. Porche had received yet another demand notice from the Credit Bureau of Baton Rouge.
On October 10, 1986, Maritime Overseas' attorney informed the plaintiff's attorney that Mr. Porche should look to the Seafarers Union for payment of medical bills.
On October 14, 1986, the plaintiff's attorney responded to the Maritime Overseas letter, stating once again that his client was being harassed by bill collectors and was being denied services for rehabilitation therapy recommended by his treating physician because of the unpaid medical bills. He further advised Maritime Overseas that as the ship's owner, they were liable for the maintenance and cure payments, and that their refusal to pay the medical bills would subject them to punitive damages.
On October 15, 1986, defense counsel was again provided with medical documentation on Mr. Porche's "not fit for duty status" and was also advised that the Credit Bureau of Baton Rouge had called the plaintiff's attorney on behalf of Our Lady of the Lake Hospital in an attempt to obtain payment of outstanding medical bills.
On October 27, 1986, defendant's counsel was provided with another letter, dated October 14th, from the Union which again denied responsibility for payment for any of the plaintiff's outstanding medical bills and another demand was made for immediate payment of the outstanding invoices. Again, on November 12th more medical bills were sent to counsel for defendant, yet again pleading for payment of same.
On November 19, 1986, defense counsel wrote that he was passing this information on to his client.
On January 5, 1987, additional medical reports were forwarded by the plaintiff's attorney along with copies of past medical bills. Significantly, it was also noted that Mr. Porche had been advised by the Credit Bureau that his credit rating had been adversely affected as a result of all the outstanding invoices. Also on January 5, 1987, a copy of a demand letter from an attorney hired by one of the medical creditors was forwarded to defense counsel along with a repeated demand for payment of all other outstanding invoices.
Finally, on January 12, 1987, the defendant made arrangements to pay all outstanding medical expenses due and owing at that time.
A review of the record and exhibits convinces us that Maritime Overseas Corporation's failure to make timely and regular payments for maintenance and cure despite repeated demands by the plaintiff supports the jury's finding that defendant's conduct was "arbitrary and capricious" and "willful, callous, and persistent".
Although, the defendant contends that the delay in making payments of medical expenses was due to its ongoing dispute with the Union over responsibility for payment of these bills, the first written documentation by the defendant to the Union was not made until September 9, 1986, some ten months after the defendant had first been put on notice by the Union that Lawrence Porche was not covered by their plan.
The record shows that Maritime Overseas had more than adequate time in which to investigate the merits of Mr. Porche's claim. Maritime Overseas' continued laxness in responding to the repeated demands of the plaintiff for payment of his medical bills so that he could receive additional treatment constitutes an unreasonable denial of maintenance and cure benefits sufficient to render the defendants liable for punitive damages.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.