# Third District Court of Appeal

## State of Florida

Opinion filed July 2, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-762
Lower Tribunal No. 23-11741-CA-01
_____

**Marshall Milton Corp.,**
Appellant,

vs.

**Marc Andre Petit-Homme,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Hamilton, Miller & Birthisel, LLP and Jules V. Massee and Kimberly A. Hendee (Tampa), for appellant.

Gerson & Schwartz, P.A., and Edward S. Schwartz and Phillip M. Gerson, for appellee.

Before LOGUE, LOBREE and GOODEN, JJ.

LOBREE, J.

Marshall Milton Corporation ("MMC") appeals an order granting Marc Andres Petit-Homme's amended motion for leave to file a second amended complaint to assert a claim for punitive damages. As there was insufficient evidence in the record showing willful, callous, or egregious conduct by MMC in investigating Petit-Homme's claim and terminating his maintenance and cure benefits, we reverse.

## BACKGROUND

On March 19, 2022, Petit-Homme's hand and fingers were severely injured in the course of his employment as a seaman on board a vessel owned by MMC. Petit-Homme was flown to a hospital in Nassau, Bahamas where he underwent surgery that included partial amputation of his index finger. After he was discharged, Petit-Homme stayed in a nearby hotel to recover and attend a follow-up visit. MMC paid for Petit-Homme's hospital stay, hotel, and all of his meals at the time. Petit-Homme eventually returned to the ship a few weeks later. He was not required to return to work and was given time to recuperate but opted to perform some of his duties. In July 2022, Petit-Homme chose to leave the ship. Petit-Homme continued to receive his full pay from MMC and resided in a rent-free apartment provided to him and his family by MMC.

2

Around two months later, MMC made a claim with its insurance carrier and turned over the handling of Petit-Homme's maintenance and cure benefits to Omega Marine Claims, LLC ("Omega"), the third-party adjuster. Petit-Homme visited Dr. Charles Hoffler, II at the Miami Hand Institute, which was paid for by Omega. Petit-Homme came in for an evaluation, complaining of pain and swelling in his long finger after using his hand at work. Hoffler did not evaluate Petit-Homme's index finger. In December 2022, MMC gave Petit-Homme a $10,000 bonus for expenses.

Around that time, the captain of the relevant ship, Scott Sherouse, asked Petit-Homme to sign some paperwork. Sherouse knew Petit-Homme had retained a lawyer around this time. According to text messages between Petit-Homme and Sherouse, this paperwork was needed to place Petit-Homme on payroll as he recently became a United States citizen. Petit-Homme declined to sign the paperwork and stated, "Dwall [the first mate] told me you said don't come on the boat if I don't sign the paperwork's [sic]. And leave without pay. I'm gonna stay away from your boat." Sherouse responded that the paperwork was for Petit-Homme to have direct deposit and reiterated that the paperwork was not a contract. Petit-Homme finally stated, "Cpt I understand what your [sic] saying but it ok. I've been thinking and I decided that the ocean just isn't for me anymore. You could call the

3

office and tell them to stop my pay." After this conversation, MMC ceased paying Petit-Homme's salary and rent.

A few weeks after this discussion, Sherouse went to Petit-Homme's home and offered him a $175,000 insurance payout to settle his claims. Petit-Homme declined. In January and February 2023, Petit-Homme's counsel sent letters to MMC but neither stated that MMC had failed to provide maintenance and cure or indicated any amounts MMC failed to pay Petit-Homme. In February 2023, Sherouse filed a termination form for Petit-Homme. The resignation form was not signed by Petit-Homme and there was no formal notice provided by Petit-Homme that he was quitting.

In March 2023, Petit-Homme filed a complaint against MMC for negligence, unseaworthiness, and negligent failure to provide maintenance and cure. A month after the complaint was filed, Petit-Homme saw Hoffler for a second time. Hoffler determined that Petit-Homme had reached maximum medical improvement ("MMI") for the damage to his long finger. He did not examine Petit-Homme's index finger. This visit was also paid for by Omega.

The litigation proceeded, and Petit-Homme moved to amend his complaint to assert a claim for punitive damages. The operative motion contended that Petit-Homme was entitled to assert a claim for punitive

4

damages because MMC's failure to provide maintenance and cure was willful, arbitrary, capricious and in disregard of Petit-Homme's rights as: (1) MMC ceased payments to Petit-Homme after he declined to sign the contract presented to him in December 2022 despite failing to investigate whether Petit-Homme had actually quit or was wrongfully terminated; and (2) MMC failed to have Hoffler make any determination as to whether further treatment was needed for Petit-Homme's index finger when declaring Petit-Homme had reached MMI. MMC responded in opposition asserting: (1) Petit-Homme was not wrongfully terminated, as the evidence shows he quit, and any failure to provide payments (other than his medical expenses which were covered by MMC) was a misunderstanding with the insurance company not a willful decision by MMC to terminate maintenance and cure; and (2) MMC was entitled to rely on Hoffler's MMI determination as Petit-Homme never expressed any issues with or asked for an evaluation of his index finger. Both parties filed evidentiary proffers. The trial court briefly heard argument from the parties on the motion and orally granted Petit-Homme's motion for leave to amend and add a claim for punitive damages. The trial court later entered a written order, absent any findings of fact, granting Petit-Homme's motion. This appeal followed.

5

**ANALYSIS**

A trial court's decision on a motion for leave to amend to add a claim for punitive damages is reviewed de novo. See Grove Isle Ass'n v. Lindzon, 350 So. 3d 826, 829 (Fla. 3d DCA 2022). Pursuant to section 768.72(1), Florida Statutes (2023), "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Section 768.72 "requires the trial court to act as a gatekeeper," which means that the trial court cannot "simply accept[ ] the allegations in a complaint or motion to amend as true." Napleton's N. Palm Auto Park, Inc. v. Agosto, 364 So. 3d 1103, 1105 (Fla. 4th DCA 2023) (quoting Bistline v. Rogers, 215 So. 3d 607, 610–11 (Fla. 4th DCA 2017)).

The framework for analyzing when punitive damages are available in maintenance and cure cases is outlined in Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987):[1]

> When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance and cure, whether or not the shipowner was at fault or the ship unseaworthy. This obligation includes paying a subsistence allowance, reimbursing medical expenses actually incurred, and

---

[1] While Morales was abrogated by Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1513 (5th Cir. 1995), Guevara itself was abrogated by Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009), thus reviving Morales.

6

> taking all reasonable steps to ensure that the seaman receives proper care and treatment.
>
> . . . .
>
> If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent. Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. *If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.*

(emphasis added) (footnotes omitted).

Petit-Homme maintains that MMC acted in a willful, callous, or egregious manner by terminating his benefits in response to Petit-Homme's retention of counsel or refusal of the settlement offer and because it showed laxness in investigating Petit-Homme's claim. The United States Court of Appeals for the Eleventh Circuit has identified factors used to determine whether punitive damages are warranted in a maintenance and cure case: "(1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; [and] (3)

7

failure to reinstate benefits after diagnosis of an ailment previously not determined medically." Hines v. J.A. LaPorte, Inc., 820 F.2d 1187, 1190 (11th Cir. 1987) (quoting Tullos v. Res. Drilling, Inc., 750 F.2d 380, 388 (5th Cir. 1985)). Upon review of the record, we conclude that Petit-Homme failed to provide reasonable evidence of willful, callous, or egregious conduct by MMC.

Petit-Homme first alleged he was entitled to punitive damages because his benefits were wrongfully terminated by MMC after he retained counsel and declined a settlement offer. Petit-Homme argues that Sherouse, while knowing Petit-Homme had retained counsel, insisted that Petit-Homme sign paperwork regarding payroll and that he would not be allowed on the boat again if he declined to do so. But the only evidence of this alleged statement by Sherouse was a text message Petit-Homme sent indicating that the first mate of the ship informed him he was not to return. Further, less than two hours after Petit-Homme sent this message, he responded to Sherouse's other texts quitting his employment stating, "I decided that the ocean just isn't for me anymore. You could call the office and tell them to stop my pay." MMC then ceased paying for Petit-Homme's salary and rent.[2] Petit-Homme

---

[2] MMC's insurer continued to pay for Petit-Homme's medical appointments with Hoffler until he reached MMI.

8

never attempted to contact any other member of MMC after this point or indicated that he had been wrongfully terminated. Based on the proffered evidence, MMC merely terminated benefits because Petit-Homme quit his job. Thus, we conclude there is insufficient evidence to demonstrate that MMC willfully, callously, or egregiously terminated Petit-Homme's benefits in response to his hiring of an attorney.

Similarly, Petit-Homme failed to proffer sufficient evidence that MMC willfully, callously, or egregiously terminated his benefits in response to his declining a settlement offer. Based on the evidence, a few weeks after Petit-Homme quit his job, Sherouse went to Petit-Homme's home and offered him a $175,000 insurance payout to settle his claims. Petit-Homme declined. This settlement offer, however, was made after MMC ceased paying for Petit-Homme's benefits. Petit-Homme cannot assert that MMC willfully, callously, or egregiously terminated his benefits after he declined a settlement offer when his benefits were terminated *before* the settlement offer was made.

Petit-Homme next contends that MMC acted in a willful, callous, or egregious manner by showing laxness in investigating his claim because it "refused" to consider the impact of the injury to his index finger. Petit-Homme relies on testimony from Hoffler that he was never instructed to review the

9

injury to the index finger as evidence that MMC was lax investigating Petit-Homme's claim. Review of Hoffler's testimony shows he stated that he did not evaluate the index finger because Petit-Homme never complained of any pain in his index finger, never requested a review of the index finger, and the worker's compensation agency asked Hoffler to evaluate Petit-Homme's long finger, not his index finger. Further, Hoffler never received any correspondence from any referring agency or person noting an impairment rating was needed for the index finger.

Additionally, Hoffler testified that at the first appointment despite the index finger being partially amputated, the injury was "remarkably benign" and the potential impairment rating for index finger was five percent, meaning Hoffler likely would have determined MMI for the index finger was reached at the second appointment. Based on this evidence, Petit-Homme therefore cannot contend that MMC showed laxness in investigating his claim because it merely relied on Hoffler's MMI finding. See Magical Cruise Co. Ltd. v. Martins, 330 So. 3d 993, 1000 (Fla. 5th DCA 2021) ("[A]n employer's reliance on the advice and opinion of a plaintiff's treating physician negates the conclusion that the employer was acting callously when terminating the plaintiff's maintenance benefits." (quoting Ward v. Inland Marine Servs., Inc., No. PCA 85-4444-RV, 0087 WL 882138, at *3 (N.D. Fla. Jan. 27, 1987))).

10

As Petit-Homme failed to proffer sufficient evidence that MMC acted in a willful, callous, or egregious manner by wrongfully terminating his benefits after he retained counsel and declined a settlement offer, or by showing laxness in investigating his claim, we conclude the trial court erred in granting his motion for leave to amend and add a claim for punitive damages.

Reversed and remanded.