**L.C. JOHNSON, Plaintiff–Appellant,**

v.

**MARLIN DRILLING COMPANY, Defendant–Appellee.**

**No. 89–4262.**

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1990.

Jeffrey A. Riggs, Richard J. Arsenault, and Stacy DeMartini Bruton, Neblett, Beard & Arsenault, Alexandria, La., for plaintiff-appellant.

Patrick H. Patrick and Edward J. Koehl, Jr., Jones Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellee.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

This is an appeal from the district court's denial of reinstatement of maintenance and cure for appellant, L.C. Johnson ("Johnson"). This Court reverses and remands for an evidentiary hearing.

I. FACTS AND PROCEDURAL HISTORY

In April of 1985, while working on a vessel owned by the appellee, Marlin Drilling Company ("Marlin"), appellant Johnson sustained injuries to his lower back. Dr. Steiner treated Johnson's back injury from April of 1985 to October of 1987, and performed various surgeries on Johnson's back. Marlin began making payments of $690.00 a month to Johnson, voluntarily, for maintenance and cure. In 1987, in a proceeding separate from the present case, Johnson brought a claim against Marlin under the Jones Act and General Maritime Law. The issue of maintenance and cure payments was not litigated in that case, because Marlin was already making these

---

payments. At the trial of the Jones Act case, depositions of two doctors were presented. The first deposition, taken in March of 1987, was of Dr. Jackson who examined Johnson on two occasions prior to the Jones Act trial. Dr. Jackson reviewed the medical records accumulated by Dr. Steiner, and in his deposition, Dr. Jackson mostly deferred to Dr. Steiner's opinions and findings, as well as to Dr. Steiner's predictions regarding Johnson's future medical condition.[1] The second deposition, taken in April of 1987, was of Dr. Steiner who predicted that after surgery to remove the screws and rods from Johnson's back, no further surgery would improve Johnson's condition. Johnson's Jones Act action of April 1987 was successful.

Approximately six months after the Jones Act trial, Marlin terminated maintenance and cure payments to Johnson. Such termination was made upon receipt of an office note dated October 2, 1987, bearing Dr. Steiner's stamp. October 2, 1987 was the last time Dr. Steiner examined Johnson. The office note stated *inter alia*, "[Johnson] has reached a point where I think his fusion is solid and that he has improved to a static level." Record vol. 1 at 12.

Approximately eight months later, in July of 1988, Dr. Jackson examined Johnson on two occasions. Later still, in Dr. Jackson's second deposition of January of 1989,[2] Dr. Jackson stated that Johnson had been experiencing greater pain than usual, that he was experiencing numbness in his left leg and that he was unable to stand more than thirty minutes at a time. Dr. Jackson recommended further surgery to relieve compressed nerves and increase their function. Dr. Jackson not only stated that further surgery would relieve Johnson of his pain, but also, Dr. Jackson stated "that the odds are great ... that he would get improvement [in strength and sensation]." Record Excerpts at 19–20. Dr. Jackson stated unequivocally that "John-son ha[d] not yet reached maximum medical improvement." Plaintiff's Exhibit No. 1. Johnson requested Marlin to reinstate maintenance and cure payments. Marlin refused and Johnson initiated the present suit.

It is clear that in this maintenance and cure action, Johnson requested an evidentiary hearing from the district court, which the district court denied. The district court made its determination on the briefs alone. Johnson presented Dr. Jackson's final deposition of January 1989, to show that Johnson had not yet reached maximum medical cure, and that the surgery Dr. Jackson intended to perform would improve Johnson's physical condition and was not merely palliative. In refutation, Marlin presented the district court with Dr. Steiner's earlier office note of October 1987 (partially quoted above), Dr. Steiner's deposition, and the first deposition taken of Dr. Jackson. With that before the judge, the district court stated that the case "boils down to which of the two physicians is more credible." Record Excerpts at 4. Finding that Dr. Steiner's deposition was more believable, the district court determined that Johnson had reached maximum medical cure as of October 2, 1987, and that the surgery recommended by Dr. Jackson was merely palliative. Johnson appeals, and this Court reverses and remands.

## II. MAINTENANCE AND CURE

Due to the unique hazards which seamen must face in their employment, maritime nations early on recognized the need to impose greater responsibilities upon the owners of ships for the safety of seamen. The object of such a policy has been two-fold, "of encouraging marine commerce and assuring the well-being of seamen." *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727, 63 S.Ct. 930, 932, 87 L.Ed. 1107 (1943). *Aguilar* also states "[a]mong the most pervasive incidents of the responsibility anciently imposed upon a shipowner for the

1. Neither Dr. Steiner nor Dr. Jackson was selected by Marlin.

2. To clarify, Dr. Jackson examined Johnson twice prior to his first deposition in preparation for the Jones Act trial, and twice before his second deposition in preparation for the present action.

health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service." 318 U.S. at 730, 63 S.Ct. at 933. The broad purposes which maintenance and cure payments are to serve should not be defeated "by restrictive and artificial distinctions.... If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf." *Id.* at 735, 63 S.Ct. at 936. In a later case, the Supreme Court stated that "when there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are to be resolved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962).

■ A determination to terminate a seaman's right to maintenance and cure must be unequivocal. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir.1985). Payments may be terminated when it is determined that the seaman has reached maximum medical cure. The point of maximum medical cure has been determined by this Court as being when "it appears probable that further treatment will result in no betterment of the seaman's condition." *Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372, 374 n. 3 (5th Cir.1981), quoting, *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979). The facts of this case must be examined against the backdrop of this law.

## III.  JOHNSON'S CLAIM

When Johnson initiated the instant suit, he presented the district court with the following: 1) the fact that he had been injured in the course of his employment as a seaman for Marlin, 2) the fact that Marlin had terminated maintenance and cure payments to him, and 3) the deposition of Dr. Jackson stating that Johnson had not yet reached maximum medical cure since further surgery would both improve Johnson's physical condition as well as alleviate pain. In opposition to Johnson's claim, Marlin produced a note written by Dr. Steiner, approximately nine months before Dr. Jackson's later examinations of Johnson. Marlin also presented the earlier depositions of both Dr. Jackson and Dr. Steiner, taken in preparation for the Jones Act trial, over a year before Dr. Jackson's most recent examinations of Johnson.

■ While it is obviously within a district court's domain to judge the credibility of the evidence presented to it, in cases of maintenance and cure, important considerations must be taken into account. Significantly, it is crucial to ensure that the rule stated in *Vaughan*, regarding the existence of ambiguities and doubts, is applied correctly. At oral argument, counsel for Marlin argued that the *Vaughan* rule has not been applied in a case involving contradictory evidence by doctors. In *Tullos*, however, the seaman had seen several doctors selected by his employer, as well as other doctors. This Court determined that there was extensive controversy among the medical opinions, and that termination of the seaman's right to maintenance and cure should be based on an unequivocal medical determination.

In the present case, the district court did not address the question of whether Dr. Steiner's earlier note of October 2, 1987, was unambiguous and unequivocal. The note stated that Johnson had "improved to a static level," and that he should be "retrained for other type employment." Record Vol. 1 at 12. This note appears to be unauthenticated and not corroborated by any testimony; furthermore it does not appear to be a clear statement of whether Dr. Steiner believed Johnson had reached maximum medical cure. It is not the function of this Court to determine whether this note was unequivocal; the function of this Court is to examine the proceedings of the hearing before the district court in order to determine whether that court was in error or whether its determination was correct. As discussed in section two of this opinion, maintenance and cure has historically been of utmost importance to injured seamen, and this Court's continuing concern for the plight of seamen mandates the holding of an evidentiary hearing. Not only should the issue of ambiguity of Dr. Steiner's note be addressed, but also whether, if Johnson

had reached maximum medical cure as of the date of Dr. Steiner's office note (also the date payments were terminated), October 2, 1987, Johnson was again entitled to maintenance and cure based on Dr. Jackson's later findings. Of critical importance, no evidence from Dr. Steiner or anyone else was presented by Marlin to contradict the more recent findings made by Dr. Jackson. Furthermore, under the *Vaughan* rule, the possibility of physical improvement, expressed by Dr. Jackson, would require a finding in favor of Johnson. Due to the importance of maintenance and cure payments, evidentiary hearings should rarely be denied. The judgment of the district court must be reversed and remanded for an evidentiary hearing in accordance with this opinion.

REVERSED AND REMANDED.