| CHRISTOPHER O. BARNES | * | NO. 2025-C-0439 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| TURN SERVICES, L.L.C. AND | * | |
| ASSOCIATED TERMINALS, | | FOURTH CIRCUIT |
| LIMITED LIABILITY | * | |
| COMPANY | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
25TH JDC, PARISH OF PLAQUEMINES
NO. 67-518, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Paula A. Brown, Judge Dale N. Atkins)

C. Arlen Braud, II
Michelle O. Gallagher
BRAUD & GALLAGHER, LLC
111 N. Causeway Blvd., Suite 201
Mandeville, LA 70448


        COUNSEL FOR RELATOR, Christopher Barnes

R. Chauvin Kean
Rachael F. Gaudet
Alex Celio Veazey
KEAN MILLER LLP
Bank Plus Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112

        COUNSEL FOR RESPONDENT, Turn Services, LLC

**WRIT GRANTED; JUDGMENT REVERSED**
**SEPTEMBER 17, 2025**

DNA

DLD

PAB

This is a maritime personal injury matter. Relator, Chrisopher Barnes ("Mr. Barnes"), seeks review of the trial court's June 25, 2025 judgment, which granted the Motion for Partial Summary Judgment filed by Respondent, Turn Services, LLC ("Turn Services").[1] The trial court granted Turn Services' Motion for Partial Summary Judgment as to Mr. Barnes' claim for punitive damages and dismissed his claim with prejudice. For the following reasons, we grant Mr. Barnes' writ application and reverse the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Petition for Damages

On July 29, 2022, Mr. Barnes filed a Petition for Damages ("Petition") against Turn Services and Associated Terminals, LLC ("Associated Terminals") (collectively "Defendants") under the Jones Act, 46 U.S.C. § 30104,[2] in the 25th Judicial District Court for the Parish of Plaquemines pursuant to the "Saving to

---

[1] As discussed more fully throughout this Opinion, another defendant filed the Motion for Partial Summary Judgment with Turn Services; but Mr. Barnes' writ application only concerns his claims against Turn Services.

[2] Section 30104 of Title 46 of the United States Code, also known as the Jones Act, is titled "Personal injury to or death of seamen." It provides, in pertinent part, that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104(a).

Suitors" Clause in 28 U.S.C. § 1333.[3] Therein, Mr. Barnes alleged that on and prior to May 29, 2022, Turn Services owned and operated a vessel called the "M/V SIR BARTON" and employed him as a Jones Act seaman assigned to said vessel. Mr. Barnes contended that Associated Terminals also operated the vessel and owned and operated a facility called the Myrtle Grove Midstream Terminal ("MGMT").

According to Mr. Barnes, on May 29, 2022, while working from the M/V SIR BARTON "doing barge work," he was "attempting to tie up a barge for towing that was located at the MGMT facility" when he "slipped and fell on the deck of the barge, causing him to be severely injured." Mr. Barnes alleged he "suffered severe injuries to his left wrist and hand" as a result of the incident. Further, Mr. Barnes alleged that the accident resulted from the negligence of Defendants, as well as their employees. Based on the record, Mr. Barnes ultimately underwent a carpal tunnel release procedure on his left wrist.

In pertinent part, Mr. Barnes asserted a cause of action under general maritime law for wages and maintenance and cure (both past and future). Additionally, Mr. Barnes stated in his Petition that "in the event it becomes necessary to pursue collection of maintenance and cure," he sought "compensatory and punitive damages, as well as attorneys' fees."

---

[3] Section 1333(1) of Title 28 of the United States Code provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." (Emphasis added.) In explaining the Saving to Suitors Clause in *Rousse v. United Tugs, Inc.*, this Court stated, "The emphasized language, commonly referred to as the 'saving to suitors' clause, has been interpreted as giving states the concurrent power to hear *in personam* admiralty cases. Thus, a maritime plaintiff may elect to pursue his *in personam* action in either state or federal court." 2017-0585, p. 5 (La. App. 4 Cir. 12/20/17), 234 So.3d 1179, 1183 (quoting *Milstead v. Diamond M Offshore, Inc.*, 1995-2446, pp. 6-7 (La. 7/2/96), 676 So.2d 89, 93-94).

**<u>Motion for Partial Summary Judgment</u>**

In May 2025, Defendants filed a Motion for Partial Summary Judgment, wherein they sought, in pertinent part, dismissal of Mr. Barnes' claim for punitive damages based on Turn Services' alleged failure to pay maintenance and cure. Defendants contended that while punitive damages are available in limited circumstances for the non-payment of maintenance and cure, none of those circumstances existed in this case. Rather, according to Defendants, Mr. Barnes had set forth no "admissible evidence to establish Turn Services' 'willful and wanton disregard' of its maintenance and cure obligation" so as to entitle him to punitive damages. Further, as argued by Defendants, "the undisputed facts plainly demonstrate that Turn Services did not act 'arbitrarily and capriciously,' nor did Turn Services act with 'callousness and indifference' to Mr. Barnes regarding maintenance and cure," such that Mr. Barnes was not entitled to punitive damages. Essentially, Defendants contended that "the law requires egregious conduct by the employer **before punitive damages will attach**."

Further, Defendants stated that Turn Services initially paid Mr. Barnes $12,360.00 of maintenance and cure from June 6, 2022, through July 16, 2023. However, Defendants explained that Turn Services denied Mr. Barnes' additional requests because Alexis Marine, LLC ("Alexis Marine"), had re-employed him and because "multiple radiological and MRI scans," as well as an independent medical examination ("IME") "confirm[ed] that there were no issues with Mr. Barnes' wrist." In terms of Mr. Barnes' employment with Alexis Marine supporting their denial of additional cure requests, Defendants pointed out that when Mr. Barnes applied to work there in July 2022 (after the alleged accident), he had to undergo a pre-employment physical examination, which revealed no abnormalities with his

arms and hands as of the date he applied. Further, Defendants noted that in a Medical History Questionnaire he completed as part of the physical examination, Mr. Barnes answered affirmatively in response to a question about whether he had ever received treatment for his elbow, shoulder, wrist, arm, or hand, noting the May 29, 2022 incident. Nonetheless, on the questionnaire, Mr. Barnes subsequently answered "no" to questions about whether he had any physical limitations that would restrict his work and whether he had experienced a major illness or injury in the prior three years. Additionally, Defendants attached the corporate deposition of Alexis Marine as an exhibit to their Motion for Partial Summary Judgment. The deposition established Mr. Barnes had worked as a deckhand for Alexis Marine for nearly one year, during which time he worked twelve hours per day and had to be capable of handling at least 100 pounds. Timing-wise, Defendants noted that it was only "[a]fter more than [one] year of his employment with Alexis Marine" that Mr. Barnes "complained that he had developed carpal tunnel syndrome."

Discussing Mr. Barnes' radiological scans, Defendants pointed to scans Mr. Barnes' underwent on June 2, 2022, shortly after the incident. One doctor who reviewed these scans—Dr. Brett Travis—found "no evidence of acute fracture . . . no evidence of subluxation. Joint spaces are maintained. No significant soft tissue swelling is identified. No acute findings." A second doctor who reviewed these scans—Dr. Nader Shourbaji ("Dr. Shourbaji")—noted that Mr. Barnes' radiology "shows no evident fracture, dislocation, or subluxation" and diagnosed him with a "sprain of [the] left wrist." Dr. Shourbaji also ordered Mr. Barnes to undergo an MRI, which Dr. Jean-Victor Bonnaig ("Dr. Bonnaig") reviewed. In support of the Motion for Partial Summary Judgment, Defendants attached Dr. Bonnaig's

4

deposition testimony and described Dr. Bonnaig as stating during his deposition that "there was [sic] absolutely no abnormalities with Mr. Barnes' wrist and . . . no signs, whatsoever, of carpal tunnel [syndrome]."

Regarding the IME, Defendants pointed to the February 13, 2025 deposition testimony of Dr. Donald Faust ("Dr. Faust"), a board-certified hand surgeon, stating that Mr. Barnes "was at maximum medical improvement [("MMI")] before [Dr. Faust] evaluated him in January 2023 based on the various radiological scans, MRIs, and [Mr. Barnes'] continued full employment with Alexis Marine." Further pointing to Dr. Faust's testimony as support for their decision to deny additional cure requests, Defendants noted that Dr. Faust "testified that it appears possible that [Mr. Barnes'] purported carpal tunnel issue developed while [he] was in the employ of Alexis Marine and did not result[] from his alleged incident of May 29, 2022," while onboard the M/V SIR BARTON. Defendants also observed that "Dr. Faust further testified that the procedure for a carpal tunnel release was not medically necessary based on his review of the information; thus, [Mr. Barnes'] request for cure related to the procedure was unreasonable."

Defendants argued that in light of the foregoing evidence, "[e]ven assuming, *arguendo*, that [Mr. Barnes] was ultimately deemed entitled to an award for maintenance and cure," he was not entitled to punitive damages under the circumstances because Turn Services "acted with diligence" in investigating his additional demand for cure "and determined that such was unreasonable and not medically necessary based on his condition." That is, according to Defendants, the denial of Mr. Barnes' additional demand for cure was reasonable, not arbitrary, capricious, callous, or indifferent, because of Mr. Barnes' gainful employment

5

with Alexis Marine, his scans, the IME report, and the lack of medical evidence to support further cure.

**Opposition to Motion for Partial Summary Judgment**

Mr. Barnes filed an opposition to Defendants' Motion for Partial Summary Judgment. Therein, Mr. Barnes argued that resolution of the issue of punitive damages was not proper for summary judgment. In support, he quoted from *Meaux v. Cooper Consolidated, LLC*, that "[w]hether the refusal to pay benefits based on a medical report was done in bad faith is a question of fact for trial." 477 F. Supp. 3d 515, 528 (E.D. La. Aug. 6, 2020) (citing *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388-98 (5th Cir. 1985)). Quoting from that same case, Mr. Barnes similarly asserted that if a case presents "unclear and inconsistent medical diagnoses and prognoses," then this is an issue for trial, not summary judgment. Further, Mr. Barnes cited to an opinion issued by the United States Court of Appeals, Fifth Circuit (*Bresse v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987)), to support his position that a seaman is entitled to have a jury decide whether a ship owner was arbitrary and capricious in denying maintenance and cure and, correspondingly, whether punitive damages should be awarded. Regarding his employment with Alexis Marine, Mr. Barnes countered that this did not change the resolution of this issue because "a seaman's return to work does not, in and of itself, terminate his right to receive maintenance and cure, especially if the return to work is due to economic needs." In support of that statement, Mr. Barnes cited to *Vaughn v. American Commercial Barge Line, LLC*, 672 F. Supp. 3d 184, 191 (E.D. La. May 12, 2023).

Mr. Barnes also countered Defendants' contentions that his carpal tunnel syndrome only developed after he had worked for Alexis Marine for one year and

6

that surgery for same was not necessary. Specifically, Mr. Barnes noted that one of his treating physicians, Dr. Blane Sessions ("Dr. Sessions"), first examined him on September 28, 2022, and diagnosed him with carpal tunnel syndrome at that time. Further, Mr. Barnes pointed out that Dr. Sessions' stated "that carpal tunnel can be caused by trauma," i.e., the subject incident. Countering Dr. Faust's opinion that surgery for his carpal tunnel was not medically necessary, Mr. Barnes pointed to his affidavit wherein he attested that his "symptoms of swelling, pain and numbness" went away after the procedure. Mr. Barnes also summarized Dr. Sessions' last treatment note from November 8, 2023, as "indicat[ing] that the signs and symptoms Mr. Barnes had been experiencing were resolving, his range of motion was improved and his hand function was improved." Additionally, Mr. Barnes stated it was not until that visit in November 2023 that Dr. Session concluded he had reached MMI.

### Hearing and Judgment

On June 18, 2025, the trial court held a hearing on Defendants' Motion for Partial Summary Judgment. In orally granting Defendants' Motion for Partial Summary Judgment regarding Mr. Barnes' punitive damages claim, the trial court stated:

> [We are] literally looking at the defendant Turn Services. What did Turn Services do investigating the claim? Well, they turned it over to Dr. Faust. Dr. Faust had all of his information, made his decision . . . . So is the rule going to be that when . . . . there is any physician on the other side that disagrees with that, that maintenance and cure has to continue into that point. I [do not] think so. Not for [the] level of punitive [damages]. I think the claim was properly investigated. . . . I just [do not] think it rises to the level of an arbitrary and capricious denial. I think they had the information from their doctor. They relied on it, and whether [Dr. Faust is] ultimately right, goes to the issue of the continuance of maintenance and care. It [does not] rise to the level of punitive damages.

7

The trial court then took the matter under advisement to consider some of the other issues raised in Defendants' Motion for Partial Summary Judgment.

Subsequently, on June 25, 2025, the trial court issued its written judgment, which stated, in pertinent part:

> This matter came before the Court on June 18, 2025, for a contradictory hearing on the Motion for Partial Summary Judgment filed by Associated Terminals, LLC and Turn Services, LLC collectively, "Defendants").
>
> . . . .
>
> Further, **IT IS HEREBY ORDERED, ADJUDICATED and DECREED** that Defendants' Motion for Partial Summary Judgment is **GRANTED** as to Plaintiff's claims for nonpecuniary and punitive damages against Defendants, and that those claims be and are hereby **DISMISSED**[] with prejudice.[4]

Though the judgment identified Associated Terminals and Turn Services as having filed the partial summary judgment motion that is the subject of this writ application, Mr. Barnes clarifies in his writ application that all pending claims against Associated Terminals have been dismissed and "[t]o avoid confusion, [his] writ application only seeks to overturn the judgment against Defendant, Turn Services."

Following the trial court's issuance of its judgment, Mr. Barnes' timely writ application to this Court followed. Turn Services filed an opposition to Mr. Barnes' writ application. In his writ application and in its opposition, Mr. Barnes and Turn Services, respectively, assert similar arguments as those they advanced before the trial court.

---

[4] We note that in its June 25, 2025, Judgment, the trial court also granted the Motion for Partial Summary Judgment as to Mr. Barnes' nonpecuniary damage claim and as to his claims for unseaworthiness against Associated Terminals. The trial court dismissed those claims with prejudice and also ruled that Mr. Barnes' claims of wrongful termination were moot because Mr. Barnes voluntarily dismissed those claims with prejudice. Mr. Barnes does not seek supervisory review as to these additional rulings.

## ASSIGNMENTS OF ERROR

Mr. Barnes asserts three assignments of error:

1) The trial court erred by dismissing Mr. Barnes' punitive damages claim when genuine issues of material fact remain in dispute as to whether [Turn Services] reviewed all medical evidence as required by applicable U.S. Fifth Circuit precedent.

2) The trial court erred by dismissing Mr. Barnes' punitive damages claim when, pursuant to applicable U.S. Fifth Circuit precedent, the jury should have been permitted to determine whether [Turn Services'] behavior entitled Mr. Barnes to punitive damages. [Turn Services'] denial of cure was based on the opinion of its physician of choice, Dr. Donald Faust, whose opinion conflicted with both of Mr. Barnes' treating physicians, Dr. Nader Shourbaji and Dr. Blane Sessions.

3) The trial court erred in finding that there were no genuine issues of material fact in dispute because that finding was based on implicit and/or explicit credibility determinations.

In sum, Mr. Barnes argues the trial court erred in granting Turn Services' Motion for Partial Summary Judgment with regard to his punitive damages claim. Before considering the merits of Mr. Barnes' assignments of error and the counterarguments asserted by Turn Services in its opposition to his writ application, we begin with the standard of review and principles applicable to the summary judgment process.

## DISCUSSION

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show

that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). In particular, a "party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Mendoza v. ACE Prop. & Cas. Ins. Co.*, 2024-0604, pp. 9-10 (La. App. 4 Cir. 5/27/25), ___ So.3d ___, ___, 2025 WL 1502349, at *4 (quoting *Anderson v. Briggs*, 2023-0814, 2024-0808, p. 12 (La. App. 4 Cir. 4/25/25), ___ So.3d ___, ___, 2025 WL 1201891, at *6). "[A] genuine issue" as this Court has defined it, is "a triable issue." *Id.* at p. 11, ___ So.3d at ___, 2025 WL 1502349, at *4. More specifically, "an issue is genuine if reasonable persons could disagree" regarding that issue. *Id.* (internal quotation marks omitted). However, "[t]here is no need for a trial on [an] issue" when "reasonable persons could reach only one conclusion" on that issue based on "the state of the evidence." *Id.* (first alteration in original). A material fact is defined as one whose "existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* When a particular fact "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute," then it constitutes a material fact. *Id.* (alterations in original). "[B]ecause the applicable substantive law determines materiality," the courts assess the "the substantive law applicable to the case" in order to determine if "a particular disputed fact is material or not." *Id.*

If and when the party moving for summary judgment satisfies the initial burden of proving no genuine issue of material fact, then "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he

10

[or she] will be able to satisfy the evidentiary burden at trial." *Id.* at p. 10, ___ So.3d at ___, 2025 WL 1502349, at *5 (quoting *Anderson*, 2023-0814, 2024-0808, pp. 12-13, ___ So.3d at ___, 2025 WL 1201891, at *6) (alteration in original). If the mover "will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). "[T]he burden shift[s] from the mover to the adverse party" only if "the motion has been made and properly supported." *Mendoza*, 2024-0604, p. 11, ___ So.3d at ___, 2025 WL 1502349, at *5 (quoting *Anderson*, 2023-0814, 2024-0808, p. 13, ___ So.3d at ___, 2025 WL 1201891, at *6).

Upon the burden shifting, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). In producing such support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . ., must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). When the trial court considers a motion for summary judgment, "the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Mendoza*, 2024-0604, p. 11, ___ So.3d at ___, 2025 WL 1502349, at *5 (quoting *Anderson*, 2023-0814, 2024-0808, p. 13, ___ So.3d at ___, 2025 WL 1201891, at *7). After the burden has

11

shifted, "summary judgment, if appropriate, shall be rendered against" the non-moving party if that party has failed to "set forth specific facts showing that there is no genuine issue for trial." La. C.C.P. art. 967(B). "This is because if 'the party opposing the motion for summary judgment fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate.'" *Mendoza*, 2024-0604, pp. 11-12, ___ So.3d at ___, 2025 WL 1502349, at *5 (quoting *Anderson*, 2023-0814, 2024-0808, p. 14, ___ So.3d at ___, 2025 WL 1201891, at *7).

When an appellate court reviews a trial court's ruling on a motion for summary judgment, the appellate court reviews the matter *de novo*, using "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* at p. 12, ___ So.3d at ___, 2025 WL 1502349, at *5 (quoting *Anderson*, 2023-0814, 2024-0808, p. 14, ___ So.3d at ___, 2025 WL 1201891, at *7). To determine the appropriateness of summary judgment, "an appellate court considers the same questions as the trial court, particularly 'whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.'" *Id.*

In reviewing a trial court's decision on a motion for summary judgment, the appellate court should be mindful that "[a] motion for a summary judgment is not to be used as a substitute for trial on the merits." *Rapp v. City of New Orleans*, 1995-1638, p. 3 (La. App. 4 Cir. 9/18/96), 681 So.2d 433 (citing *Oller v. Sharp Elec., Inc.*, 451 So.2d 1235, 1237 (La. App. 4th Cir. 1984)). To this end, the summary judgment procedure is not appropriate "for the judicial determination of subjective facts, such as motive, intent, good faith, knowledge and malice" because

"that calls for credibility determinations and weighing the testimony of witnesses." *LZM Props., LLC v. Priv. Connection Prop., Inc.*, 2023-0707, 0708, p. 21 (La. App. 4 Cir. 4/25/24), 390 So.3d 861, 875 (quoting *Jones v. Gov. Emps. Ins. Co.*, 2016-1168, p. 13 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 925). Similarly, "summary judgment is rarely appropriate for the disposition of issues requiring a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case." *Id.* (quoting *Jones*, 2016-1168, pp. 13-14, 220 So.3d at 925) (citing *Petkovich v. Franklin Homes, Inc.*, 2021-0448, p. 2 (La. App. 4 Cir. 9/22/22), 349 So.3d 1042, 1046).

With the preceding principles in mind, we turn to the applicable substantive law.

## Law to be Applied

As previously discussed, Mr. Barnes filed his Petition in state court pursuant to the Saving to Suitors Clause. In *Rousse*, this Court explained that when "state courts exercise[e] concurrent maritime jurisdiction," as in this matter, the state courts "are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence." 2017-0575, p. 5, 234 So.3d at 1183 (quoting *Milstead*, 1995-2446, p. 7, 676 So.2d at 94). This Court further explained that, in so doing, "[h]owever, [state courts] may adopt such remedies, and attach to them such incidents as they see fit, so long as they do not attempt to make changes in the substantive maritime law." With this in mind, we consider whether Turn Services was entitled to summary judgment and dismissal of Mr. Barnes' punitive damages claim.

13

**<u>Whether Turn Services was Entitled to Summary Judgment</u>**

Utilizing federal maritime law, the matter *sub judice* requires us to determine whether Turn Services established on summary judgment that there is no genuine issue of fact with regard to Mr. Barnes' punitive damages claim. At the outset, we note that "[a] claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Rousse*, 2017-0585, p. 5, 234 So.3d at 1184 (quoting *Lewis v. Lewis & Clark Marine Inc.*, 531 U.S. 438, 441, 121 S.Ct. 993, 997 (2001)). The "maintenance" aspect is "a per diem living allowance for food and lodging comparable to what the seaman is entitled to while at sea." *Vaughn*, 672 F. Supp. 3d at 189 (first citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651 (1938); and then citing *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979)). The "cure" aspect of maintenance and cure constitutes "payment of medical expenses incurred in treating the seaman's injury or illness." *Id.* A shipowner has a "duty to pay maintenance and cure . . . until the seaman reaches the point of maximum medical recovery, also known as maximum medical improvement (MMI)." *Id.* (citation omitted). This occurs when "the seaman recovers from the injury, the condition permanently stabilizes, or the condition cannot be improved further." *Id.* (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1359 (5th Cir. 1987)). If there are "[a]ny ambiguities or doubts regarding entitlement to cure or the date of maximum medical improvement," such "must be resolved in favor of the seaman." *Id.* (citing *Caulfield v. AC&D Marine, Inc.*, 633 F.2d 1129, 1132 (5th Cir. 1981)).

After a seaman asserts a claim for maintenance and cure, the shipowner has an "obligation to investigate . . . [the] claim and examine all medical evidence in

determining whether maintenance and cure is owed." *Id.* (citing *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985)). If "a seaman has proved his initial entitlement to maintenance and cure," then "the burden shifts to the ship owner to prove that maximum cure has been reached." *Id.* (citation omitted). When a "ship owner unilaterally decides to stop paying maintenance and cure, and the seaman reasserts his right by bringing an action against the ship owner," then the ship owner can only meet the burden of proving the seaman has reached MMI with "unequivocal evidence" of same. *Id.*, 672 F. Supp. 3d at 189-190 (citing *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990)). As such, "[a]bsent an unequivocal justification to terminate a seaman's maintenance and cure because a seaman has reached MMI, a ship owner may subject itself to liability for punitive damages and attorney's fees if it terminates benefits nonetheless." *Id.*, 672 F. Supp. 3d at 190 (citing *Rowan v. Chem Carrier Towing, LLC*, No. 12-712, 2015 WL 2097572, at *6 (E.D. La. May 5, 2015)). Such an unequivocal justification is not present "[w]hen there are conflicting diagnoses and prognoses from various physicians." *Bosarge v. Cheramie Marine LLC*, 121 F. Supp. 3d 599, 606 (E.D. La. 2015) (citing *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La.2013)). Rather, in that instance, "there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious." *Id.* Thus, while a ship owner's "decision to rely on certain medical records" in denying a maintenance and cure claim over other records, such as those of the seaman's treating physician(s), ultimately "may not be arbitrary and capricious," that is nonetheless "sufficient evidence entitling [the seaman] to have [a] jury resolve his arbitrary and capricious claim." *Williams*

*v. Maersk Line, Ltd.*, 450 F. Supp. 3d 242, 261 (citing *Tullos*, 750 F.2d at 389). Therefore, in such a situation, summary judgment is inappropriate. *See generally Bosarge*, 121 F. Supp.3d at 606.

In light of the delineated jurisprudence, we agree with Mr. Barnes' argument that the issue of whether he is entitled to punitive damages was inappropriate for resolution via summary judgment. Turn Services declined to provide Mr. Barnes additional maintenance and cure on the basis of its IME's opinion, particularly Dr. Faust's contention that Mr. Barnes had reached MMI before January 2023; but Mr. Barnes' treating physician, Dr. Sessions, found he did not reach MMI until November 2023. In light of these conflicting opinions, Turn Services did not have unequivocal justification to terminate Mr. Barnes' maintenance and cure. The conflicting opinions created a question of fact for determination by the trier of fact as to Mr. Barnes' entitlement to maintenance and cure benefits and as to whether Turn Services' termination of same was arbitrary or capricious. While the trier of fact may ultimately determine that Turn Services' decision to rely on Dr. Faust's opinion in denying Mr. Barnes' maintenance and cure claim over other records, such as those of Dr. Sessions, was not arbitrary and capricious, the conflicting evidence was nonetheless sufficient to entitle Mr. Barnes to have a jury decide this issue. Summary judgment was thus inappropriate, so the trial court erred in granting it and in dismissing Mr. Barnes' claim for punitive damages.

Moreover, we note that in orally granting the Motion for Partial Summary Judgment, the trial court stated that Turn Services had "properly investigated" Mr. Barnes' maintenance and cure claim, such that Turn Services' conduct did not "rise to the level of punitive damage." Further, the trial court stated that Turn Services "had the information from [Dr. Faust]" and "relied on it." As previously stated, an

important principle to bear in mind in the summary judgment process is that it "is inappropriate for determination of subjective facts," including the good or bad faith of an actor. It is also "rarely appropriate" in deciding "the reasonableness of acts and conduct of parties under all the facts and circumstances of a case." Considering the statements made by the trial court before orally ruling, it is evident the trial court considered the reasonableness of Turn Services' decisions—to rely on Dr. Faust's opinion and other information in denying Mr. Barnes' maintenance and cure claims—and considered whether those decisions rose to a level of bad faith so as to constitute arbitrary and capricious behavior under maintenance and cure law. In so doing, the trial court acted beyond the scope of what is permitted in the summary judgment process and thus erred.

In sum, we conclude the trial court erred in granting the Motion for Partial Summary Judgment in Turn Services' favor and dismissing Mr. Barnes' claim for punitive damages.

## DECREE

For the foregoing reasons, we grant Mr. Barnes' writ application[5] and reverse the trial court's June 25, 2025 judgment, which granted the Motion for Partial Summary Judgment filed by Turn Services regarding Mr. Barnes' punitive damages claim.

**WRIT GRANTED; JUDGMENT REVERSED**

---

[5] We note that our analysis established the *Herlitz* factors are implicated in this matter. Although a reversal of the trial court's ruling will not terminate this litigation and there are still disputes of fact to be resolved, the trial court's ruling was arguably incorrect for the reasons delineated in our Opinion. *See Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La. 1981) (wherein the Louisiana Supreme Court held that "[w]hen the overruling of the exception is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits.")